WATKINS, Judge.
This is an action for the alleged theft of plaintiff’s, Clide (Clyde) Vessel (Vessell)’s Ford pickup truck while in the custody of Bennett Ford, Inc. Also made defendant is Sentry Insurance Company, Bennett Ford’s public liability insurer.
We have thoroughly reviewed the record, including the transcript of testimony and exhibits, and find that the written reasons for judgment prepared by the trial court well set out the facts and applicable law. We therefore adopt the trial court’s reasons for judgment as our own, and quote from them in full:
“In his petition, plaintiff alleges that on September 20, 1979 he drove his 1977 Ford pick-up truck, Vehicle Serial No. F37sNY81140, to the automobile repair shop for Bennett Ford, Inc., where he had originally purchased the vehicle. Plaintiff further alleges that several weeks later, after inquiring about the vehicle, he was informed that his vehicle had been stolen.
Defendants allege they are totally free from fault and deny liability. In the alternative, they allege contributory negligence and assumption of the risk.
This matter came up for trial on the merits on June 22, 1981.
The testimony of both parties was to the effect that in the past the truck had been taken to the dealership for certain repairs. The last time it was taken to the dealership, the warranty had expired, but defendants had agreed to check the truck over without charge to determine what repairs needed to be done and after that, plaintiff could decide whether he wanted to pay to get it fixed at the dealership or elsewhere. Both parties also testified that in the past, each time the truck was picked up they had to go to the office to pick up the keys.
Plaintiff, Clyde Vessell, testified that he brought the vehicle to the dealership and at one time, had his brother, David, check on what the dealership had found wrong with the truck. He testified that he never authorized anyone, including David, to tell the dealership to leave it outside for someone to pick up. David Vessell testified that he saw the truck when he came to check on it, but never told the dealership to leave it out for someone to pick it up. Clyde Vessell testified that after David visited the dealership, he himself went to the dealership twice and talked to Michael Bennett, the Service Manager, but didn’t see the truck.
Defendants, on the other hand, allege that David told them to leave it out for someone to pick up. Michael Bennett, the Service Manager, testified that David told him to leave it out and that someone would pick it up. The truck was put out on the lot and locked up, with the keys put in the office, and was shown that it received the same treatment as all other cars either owned by or in the custody of Bennett Ford. When the truck was later found gone, the defendants were not sur *352 prised because they thought plaintiff had picked it up. Michael Bennett testified that it stayed outside for several weeks and that one day when he came back from lunch it was gone. At trial, defendants presented the only set of keys to the truck that they had possession of. There was a second set which was in the possession of plaintiffs, but which plaintiffs did not show at the trial on the merits.
The testimony of defendant’s witnesses was to the effect that Bennett Ford was located at the intersection of two major streets in St. Francisville, which streets were patrolled by the town police; that the car lots were not fenced in or privately guarded; that the lots were well lighted; and that from past experience they had had only one car stolen, from the inside of the dealership by an escaped convict. All testimony was to the effect that plaintiff’s truck received the same attention, care and safeguards, as other cars owned by or in the custody of Bennett Ford.
The applicable jurisprudence treats automobile dealers as compensated depo-sitaries. Leatherman v. Miller’s Mutual Fire Insurance Company of Texas, 297 So.2d 540 (3rd Cir., 1974); Zurich Insurance Company v. Daigle Pontiac-Buick, Inc., 292 So.2d 282 (1st Cir., 1974). Under the jurisprudence where the bailor or customer proves he made a deposit and that while in the custody of the bailee, the property is lost or cannot be returned, a prima facie case is established against the bailee, and it then becomes his duty to show that the loss is due to other causes consistent with due care on his part. To exculpate himself from liability, the bailee must show that it is free from fault or negligence and such showing must be sustained by a preponderance of the evidence. But the bailee is not the insurer of the bailor’s property and only owes the duty of a prudent administrator, taking as good care of bailor’s property as he would his own. Zesiger v. Dean, 247 So.2d 222 (4th Cir.1971); Sonnier Oldsmobile, Inc. v. Southeastern Fidelity Insurance Company, 377 So.2d 572 (3rd Cir. 1978) (sic); Johnson v. Allright New Orleans, Inc. 357 So.2d 1210 (4th Cir.1978); Verdin v. Quality Chevrolet Company, Inc. 255 So.2d 458 (1st Cir.1971); St. Paul Fire and Marine Insurance Company v. Zurich Insurance Company 250 So.2d 451 (4th Cir.1971); Leatherman v. Miller’s Mutual Fire Insurance Company of Texas, supra; and Zurich Insurance Company v. Daigle Pontiac-Buick, Inc., supra.
In Zurich Insurance Company v. Daigle Pontiac-Buick, Inc. supra, there was present somewhat the same factual situation as is present in this case. In that case, the Court of Appeal held that the dealer who left the automobile on a well lighted lot on a main thoroughfare which was regularly patrolled by police and who locked the automobile and placed the keys in a safe place exercised the same degree of care over the automobile as he exercised over his own automobiles, took all reasonable precautions, even though no night watchman was provided, and thus complied with the duty imposed upon a compensated depositary; and that the dealer was not required to be an insurer of the vehicle.
Much of the testimony of plaintiff was related to difficulty that he had experienced with the truck and the efforts of the defendant to remedy the difficulties. There were no apparent emotional overtones or animosities. The parties have known each other for a considerable time. It is also suggested that the defendant made corrections or repairs beyond the warranty obligations.
There was testimony, however, that is simply irreconcilable. There was testimony that taunts curious interest.
In direct contradiction is the substance of a conversation between Mike Bennett and David Vessel relative to leaving the truck on the lot for the owner to pick up. Mike Bennett testified under oath he was so instructed; David Vessel, brother of the plaintiff, testified under oath denying the instruction.
If accepted as true, the instruction may have become an intervening factor in the *353 general bailor-bailee or depository relationship.
Also irreconcilable is the testimony of defendant witnesses that the tests were made on the truck, but no engine work was performed. A plaintiff witness related that he had seen the truck with the engine removed. Engine removal is not likely.
Those matters which raise questions about plaintiffs position are the fact of his placing insurance on the truck in December and the curious absence of the second set of keys. The defendant produced the set in his custody. The plaintiffs represent that within two weeks of the trial their set of keys had been removed, displaced, or otherwise not produced.
The brief of defendant clearly recites his legal position and raises the inconsistencies in plaintiff’s contentions in depositions and testimony.
The brief of the plaintiff relies on the legal obligation of the parties.
Applying the above jurisprudence to the facts in this case, the bailee, in this case Bennett Ford, Inc., has met its burden of showing it is free from fault or negligence by a preponderance of the evidence.
For reasons assigned, judgment will be signed for defendant, dismissing plaintiff’s claim at plaintiff’s cost.”
Accordingly, the judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.